```
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF CONNECTICUT
```

HECTOR RIOS,                    )
                                )
        Petitioner,              )
                                )         PRISONER
    v.                          )    Case No. 3:03cv1956 (AWT)
                                )
WARDEN JAMES DZURENDA, et al.,   )
                                )
        Respondents.             )

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Hector Rios, is currently confined at the Cheshire Correctional Institution in Cheshire, Connecticut. He brings this action pro se for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his 2000 conviction on charges of attempted robbery in the first degree, conspiracy to commit robbery in the first degree and assault in the first degree. For the reasons set forth below, the petition is being denied.

### I.  Procedural Background

In January 2000, a jury in Connecticut Superior Court for the Judicial District of New Haven convicted the petitioner of one count of one count of conspiracy to commit robbery in the first degree in violation of Connecticut General Statutes §§ 53a-48(a) and 53a-134(a)(2), one count of attempt to commit robbery in the first degree in violation of Connecticut General Statutes §§ 53a-49 and 53a-134(a)(2), and three counts of assault in the first degree in violation of Connecticut General Statutes

§§ 53a-8 and 53a-59(a)(5). On June 2, 2000, a judge sentenced the petitioner to a total term of imprisonment of 36 years. On December 17, 2002, the Connecticut Appellate Court affirmed the judgment of conviction. See State v. Rios, 74 Conn. App. 110, 810 A.2d 812 (2002). On February 5, 2003, the Connecticut Supreme Court denied certification to appeal the decision of the Connecticut Appellate Court. See State v. Rios, 262 Conn. 945, 815 A.2d 677 (2003).

## II. Factual Background

On direct appeal, the Connecticut Appellate Court found the following facts.

> On January 3, 1997, Diare Jones was on the front porch of his grandmother's residence at 160 West Street in New Haven. His uncles, James Boyd and Harold Boyd also were present on the porch. Two Hispanic males emerged from a nearby alleyway and approached the porch. One of the men, the [petitioner], came closer and asked if the men on the porch had an illegal drug known as "illy"[1] available for purchase. James Boyd responded that he did not have any "illy," but he did have some marijuana that he was willing to sell. The [petitioner] gave James Boyd twenty dollars in exchange for a bag containing marijuana. When James Boyd turned around to enter the

---

[1] Jones testified that he understood "illy" to be a combination of marijuana and embalming fluid. It also has been described as mint leaves soaked in embalming fluid, State v. Spyke, 68 Conn.App. 97, 102 n. 4, 792 A.2d 93, cert. denied, 261 Conn. 909, 804 A.2d 214 (2002), or a mixture of phencyclidine (PCP), wood alcohol, methanol and formaldehyde. State v. Billie, 47 Conn.App. 678, 680 n. 2, 707 A.2d 324 (1998), aff'd, 250 Conn. 172, 738 A.2d 586 (1999).

2

> house to get change, the defendant pulled out
> a gun and ordered him to hand over all of his
> money. The [petitioner] then fired the gun at
> James Boyd, hitting him three times. The
> [petitioner] then proceeded to shoot at
> Jones, hitting him twice in the back and once
> in the right leg. Finally, the [petitioner]
> shot Harold Boyd in the leg and left the
> scene. Thereafter, medical personnel
> transported all three victims to a hospital
> for treatment.
>
> Shortly after arriving at the hospital, a
> police detective asked the victims to look at
> some photographs to see if they could
> identify the shooter. All three victims were
> unable to make an identification. On January
> 10, 1997, while still in the hospital, Jones
> identified the [petitioner] as the shooter
> after he was shown an array of photographs.
> James Boyd, after being released from the
> hospital, was able to identify the
> [petitioner] as the shooter after being shown
> an array of photographs.[2] On January 20,
> 1997, a police detective went to Harold
> Boyd's residence to take a statement and show
> him a series of photographs. Harold Boyd,
> however, could not make a positive
> identification.
>
> The police subsequently arrested the
> defendant.

Rios, 74 Conn. App. at 113-14, 810 A.2d at 814-15.

### III. **Standard of Review**

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that he is being held in custody in violation of the Constitution or other federal law. See 28 U.S.C. §

---

[2] During the trial, Jones and James Boyd identified the defendant as the individual who had shot them.

2254(a). A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court. See Estelle v. McGuire, 502 U.S. 62, 68 (1991).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. See Williams v. Taylor, 529 U.S. 362, 412 (2000) (O'Connor, J., writing for the Court).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court, or if it decides a case differently than the Supreme Court on essentially the same facts. See Bell v. Cone, 535 U.S. 685, 694 (2002). A state court unreasonably

4

applies Supreme Court law when the court correctly identifies the governing law, but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it also must be objectively unreasonable. See Rompilla v. Beard, 545 U.S. 374, 380 (2005).

When reviewing a habeas petition, a federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). See Boyette v. Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001) (noting that deference or presumption of correctness is afforded state court findings where state court has adjudicated constitutional claims on the merits). Because collateral review of a conviction applies a different standard than is applied on the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be a sufficient basis to grant a habeas petition. See Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

**IV. Discussion**

The petitioner raises two grounds for relief: (1) the trial court improperly restricted the scope of questioning during voir dire regarding the potential jurors' views on photographic identification, and (2) the trial court improperly denied his attorney's request to refer to a drawing during closing arguments.

5

A.  <u>Questioning During Voir Dire</u>

During voir dire, the trial court sustained objections by the state's attorney to questions by defense counsel regarding identifications made based on photographs because the questions touched on facts of the case.  The petitioner asserts that the trial court's actions unreasonably restricted the scope of questioning of potential jurors in violation of his Sixth Amendment rights.  The Connecticut Appellate Court determined that the following additional facts were relevant to this claim.

> Voir dire commenced on November 23, 1999. After the first member of the venire quickly was excused for cause, examination of the second member commenced. The following colloquy ensued:

"[Defense Counsel]: Q. Have you ever heard about identification testimony, testimony based on photographs? Have you ever seen that on TV?

"[Venireperson]: A. Yeah. They had the lineup, and you go through the lineup, and the person picks out who-

"[Defense Counsel]: Q. When you hear that, could you tell me anything that comes to your mind about that type of testimony?"

> At that point, the state's attorney objected and the venireperson was temporarily removed from the courtroom. The court, after hearing argument from both counsel, sustained the objection, noting that the question was improper for voir dire because it touched on the facts of the case. The venireperson returned to the courtroom, and defense counsel was permitted to ask whether he believed if witnesses always tell the truth, whether a witness could make a mistake and whether a confident witness automatically is

> correct.[3] Both counsel accepted the individual as a member of the jury.
>
> For the remainder of the questioning done on November 23, 1999, defense counsel asked the members of the venire questions regarding their perceptions and beliefs as to whether witnesses always tell the truth, whether mistakes can be made by witnesses with respect to identification and whether a confident witness automatically is correct. The prosecutor often questioned venirepersons as to whether they had any preconceived notions that a witness automatically would lie or make a mistake.
>
> On November 24, 1999, prior to the start of voir dire, defense counsel requested that the court rule on the propriety of the following question: "Do you think it's possible for someone to observe an event and identify someone as being involved, and it turns out they are mistaken?" The court sustained the state's objection on the ground that the question touched on the facts of the case. The court permitted counsel to ask whether the venireperson believed that the witness, even a confident one, could be wrong. During the next two days of voir dire, defense counsel and the prosecutor questioned venirepersons regarding their beliefs on the accuracy of a witness to make a positive identification and the possibility that the witness could make an error.

Rios, 74 Conn. App. at 116-17, 810 A.2d at 815-17.

The Sixth Amendment to the Constitution guarantees a defendant the right to a public trial by an impartial jury. Although the Constitution makes no mention of voir dire, the law

---

[3] Defense counsel also was permitted to ask whether the prospective juror would give more credibility to the testimony of a police officer than that of a citizen. See, e.g., State v. Dolphin, 203 Conn. 506, 513, 525 A.2d 509 (1987); State v. Hill, 196 Conn. 667, 672, 495 A.2d 699 (1985).

7

recognizes the important role this process plays in ensuring the fair and impartial criminal jury mandated by the Sixth Amendment. See Morgan v. Illinois, 504 U.S. 719, 729 (1992) (observing that "part of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors"). Voir dire helps the trial court and the parties identify those persons who, for various reasons, cannot evaluate the evidence impartially or follow the court's legal instructions. Trial judges have traditionally been accorded broad discretion in conducting voir dire because they are primarily responsible for empaneling impartial juries. See Rosales-Lopez v. United States, 451 U.S. 182, 189 (1981) ("Because the obligation to impanel an impartial jury lies in the first instance with the trial judge, and because he must rely largely on his immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the voir dire.") The trial judge is expected to exercise discretion "subject to the essential demands of fairness." Morgan, 504 U.S. at 730.

The Connecticut Appellate Court noted that the identification of the petitioner as the shooter of the victims was a critical fact for the jury to decide. The court concluded that it was not an abuse of discretion for the trial judge to restrict the questioning during voir dire on the issue of photographic identification because trial counsel was able to ask potential jurors about their thoughts on the ability of a witness

to make an accurate identification and whether an extremely confident witness could be mistaken as to his or her identification. The court concluded that the trial judge had properly exercised his discretion to "strike a balance between allowing questions regarding witness identification and avoiding questions that touched on the facts of the case." Rios, 74 Conn. App. at 118; 810 A.2d at 817. The Connecticut Appellate Court's determination that the trial court's restriction on voir dire questioning was not an abuse of discretion in view of counsel's opportunity to ask a sufficient number of voir dire questions directed to witness identification was not contrary to or an unreasonable application of Supreme Court law and was not based on an unreasonable determination of the facts. Therefore, the petition for writ of habeas corpus on this ground is being denied.

  B. <u>Request to Refer to Drawing During Closing</u>

During closing arguments, the petitioner's attorney moved to refer to a drawing that had not been admitted into evidence. The petitioner contends that the trial court deprived him of his Sixth Amendment right to effective assistance of counsel when it denied this request.

The Connecticut Appellate Court determined that the following additional facts were relevant to this claim.

> The drawing in question simultaneously
> depicted the image of a young woman and an
> old woman. Depending on the angle from which
> the viewer looks at the drawing, the image of

9

> either the old woman or the young woman may
> be perceived. Only after further viewing, or
> a shift in the angle from which the drawing
> is viewed, will the second image emerge. The
> defendant wanted to use the drawing to
> demonstrate the ease of misidentification.

Rios, 74 Conn. App. at 118-19, 810 A.2d at 817.

"The right to effective assistance extends to closing arguments." Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (citing Herring v. New York, 422 U.S. 853, 865 (1975) (trial judge's order denying counsel the opportunity to make a summation at close of bench trial denied defendant effective assistance of counsel). A district court has a great deal of discretion "in controlling the duration and limiting the scope of closing summations." Herring, 422 U.S. at 862. In U.S. v. Bautista, 252 F.3d 141, 145 (2d Cir.2001), the Second Circuit concluded that a view of the record as a whole revealed that "there was no abuse of discretion in the district court's decision to restrict defense counsel's closing arguments to the evidence actually presented in the case, and certainly no error of constitutional dimension." Id.

Although the Connecticut Appellate Court did not cite Supreme Court cases on improper restriction of closing arguments, the standard the court applied is consistent with the Supreme Court law. The Connecticut Appellate Court noted that the drawing had not been introduced into evidence prior to closing arguments. The court concluded that it was not an abuse of discretion for the trial judge to deny counsel's request to refer

to the drawing during his closing statement because counsel "was able to make a similar argument to the jury regarding the potential for misidentification using a photograph of the crime scene that had been admitted into evidence." Rios, 74 Conn. App. at 119; 810 A.2d at 818. The Connecticut Appellate Court's conclusion that the trial court's restriction on counsel's closing argument was not an abuse of discretion in view of counsel's opportunity to refer to a photograph of the crime scene to make a similar argument regarding the possibility of misidentification was not contrary to or an unreasonable application of Supreme Court law and was not based on an unreasonable determination of the facts. Therefore, the petition for writ of habeas corpus on this ground is being denied.

**V. Conclusion**

The petition for a writ of habeas corpus [**Doc. #1**] is hereby **DENIED**. Because the petitioner has not made a showing of the denial of a constitutional right, a certificate of appealability will not issue. The Clerk is directed to enter judgment and close this case.

It is so ordered.

Dated this 25th day of November 2008, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge